Joshua B. Swigart (SBN 225557)
Josh@SwigartLawGroup.com
**SWIGART LAW GROUP, APC**
2221 Camino del Rio S, Ste 308
San Diego, CA  92108
P: 866-219-3343

Daniel G. Shay (SBN 250548)
DanielShay@TCPAFDCPA.com
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste 308
San Diego, CA  92108
P: 619-222-7429

Ben Travis (SBN 305641)
ben@bentravislaw.com
**BEN TRAVIS LAW, APC**
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Phone: (619) 353-7966

*Attorneys for Plaintiff
and the Putative Class*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KAUFFMAN, individually and on behalf of others similarly situated, <br><br> Plaintiff, <br> vs. <br><br> 800 POUND GORILLA MEDIA, LLC, <br><br> Defendant. | Case No: **'24CV0787 DMS VET** <br><br> <u>CLASS ACTION</u> <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

1

Class Action Complaint

## INTRODUCTION

1. David Kauffman ("Plaintiff"), individually and on behalf of all other similarly situated consumers ("Class Members"), brings this action for damages and injunctive relief against 800 Pound Gorilla Media, LLC ("800 Pound" or "Defendant"), for disclosing consumers' identities and video-viewing preferences to Meta Platforms Inc. ("Meta"), in violation of the Video Privacy Protection Act ("VPPA") and California Civil Code § 1799.3.

2. The VPPA prohibits "video tape service providers," such as 800 Pound, from knowingly disclosing a consumer's personally identifiable information ("PII")—in particular, "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider"—unless the consumer expressly consented to the disclosure in a standalone consent form.

3. 800 Pound shares consumers' personal information with Meta using a "Meta Pixel" which is a snippet of programming code that, once installed on a webpage, sends information to Meta.

4. The Meta Pixel sends information to Meta in a data packet containing PII, which Meta then stores on its own servers.

5. The information that 800 Pound shares with Meta includes the consumer's unique Facebook ID ("FID") and the titles of prerecorded videos that the consumer requested or obtained. A consumer's FID is linked to their Facebook profile, which generally contains a wide range of demographic and other information about the consumer.

6. 800 Pound discloses the consumer's FID and viewing content to Meta together in a single transmission. Because the FID uniquely identifies an individual's Facebook account, Meta, as well as any other person, can use the FID to quickly and easily locate, access, and view that person's corresponding Facebook profile. In simplest terms, the Meta Pixel allows Meta to know what video content one of its members viewed on Defendant's website.

7. Consumers do not consent to such sharing by 800 Pound through a standalone consent form, as required by the VPPA. As a result, 800 Pound violates the VPPA by disclosing this information to Meta.

## PARTIES

8. Plaintiff is a natural person and resident of the State of California and the County of San Diego.

9. Defendant is a Delaware corporation with its principal place of business located in Tennessee.

10. At all times relevant herein Defendant conducted business in the State of California, in the County of San Diego, within this judicial district.

## JURISDICTION & VENUE

11. This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiff's claims under the Video Privacy Protection Act, 18 U.S.C. § 2710.

12. This Court also has federal subject matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which there are at least 100 Class members, the amount in controversy exceeds $5,000,000, and Defendant and Plaintiff are diverse.

13. Plaintiff is requesting statutory damages of $2,500 per violation of the VPPA, which when aggregated among a proposed class number in the thousands, far exceeds the $5,000,000 threshold for federal court jurisdiction under CAFA.

14. Therefore, this Court has federal subject matter jurisdiction.

15. This Court has personal jurisdiction over Defendant because a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in California. The violations complained of herein resulted from Defendant's purposeful and tortious acts directed towards citizens of California, such as Plaintiff, while they were located within California. At all relevant times, Defendant did business over the internet with residents of California, including Plaintiff, and rented videos to residents of California. Defendant knew that its practices would directly result in real-time viewing and

1  collection of information from California citizens while those citizens were engaged in
2  commercial activity on Defendant's website. Defendant chose to benefit from
3  marketing and doing business in California. The claims alleged herein arise from those
4  activities.

5      16. Furthermore, on information and belief, Defendant has team members
6  based in Los Angeles, California.

7      17. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons:
8  (i) the conduct complained of herein occurred within this judicial district; and (ii)
9  Defendant conducted business within this judicial district at all times relevant.

## FACTUAL ALLEGATIONS

**A. Common Allegations**

    18. 800 Pound is one of the world's leading comedy media companies. It produces, distributes, and markets stand-up comedy video specials and audio albums to comedy fans across the globe.

    19. 800 Pound website visitors can access a variety of comedy video content on its website located at 800poundgorillamedia.com. Website visitors can also pay to rent pre-recorded video content from Defendant's website. Defendant provides and delivers prerecorded audiovisual content to its visitors.

    20. Website visitors can also subscribe on Defendant's website.

    21. When Plaintiff and Class members requested and viewed prerecorded video content on Defendant's website, Defendant transmitted their viewing choices to Meta.

    22. Defendant's transmission of viewing information to Meta includes the specific titles of video content viewed by consumers, as well as the consumer's FID which is a string of numbers unique to each Facebook profile that personally identifies the member.

    23. Anyone who possesses a FID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile by simply visiting

www.facebook.com/[the user's FID]. Facebook profiles contain large amounts of personal information.

24. A Facebook profile typically shows the Facebook user's name, gender, place of residence, career, educational history, a multitude of photos, and the content of the user's posts. This information may reveal even more sensitive personal information—for instance, posted photos may disclose the identity of family members, and written posts may disclose religious preferences, political affiliations, personal interests and more.

25. Just as Meta can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of a FID. Thus, equipped with a FID and the video content name and URL, any ordinary person could determine the identity of the 800 Pound member and the specific video or media content they viewed on Defendant's website.

26. Defendant transmits the FID and video title to Meta in a single transmission, through a Meta Pixel. A Meta Pixel is a snippet of a programming code that, once installed on a webpage, sends information to Meta. This transmission occurs when a member views a prerecorded video on Defendant's website.

27. The Meta Pixel is an advertising tool that allows website owners to track visitor actions on their websites for purposes of sending the corresponding information to Meta; websites use the Pixel in hopes of better targeting their products and services on Facebook to interested consumers. Thus, a business such as Defendant chooses to install the Pixel on its website in order to increase its profits.

28. According to Meta's website, the Meta Pixel allows it "to match your website visitors to their respective Facebook User accounts" and that "[o]nce matched, we can tally their actions in the Facebook Ads Manager so you can use the data to analyze your website's conversion flows and optimize your ad campaigns."[1]

---

[1] https://developers.facebook.com/docs/meta-pixel/get-started (last visited April 23, 2024).

29. Defendant knew that by installing the Pixel on its website, the Pixel would send Meta information identifying website visitors and their video-watching habits.

30. Meta's website explains that, to begin using the Meta Pixel, a business must first "install" the Pixel "by placing the Meta Pixel base code on all pages of your website."[2] Defendant made the conscious decision to undertake this installation process.

31. Meta benefits from websites like Defendant installing its Pixel. When the Pixel is installed on a business's website, the business has a greater incentive to advertise through Facebook or other Meta owned platforms, like Instagram. In addition, even if the business does not advertise with Facebook, the Pixel assists Meta in building more fulsome profiles of its own users, which in turn allows Meta to profit from providing more targeted ads. The Pixel is installed on a variety of websites and, accordingly, provides Meta with information about its users' preferences, other distinguishing traits, and web browsing activities outside of Meta-owned platforms.

32. Using the Meta Pixel likewise benefits Defendant's business by improving its ability to promote its content and services to its members, thereby increasing its profits.

33. Through use of the Meta Pixel, Defendant discloses to Meta the full name of each video a person watched, together with the person's FID, thus linking members' viewing content choices and preferences to their Facebook profiles.

34. Defendant violates and invades the privacy rights of consumers with its practice of sending their FIDs, together with their viewing content, to Meta. Plaintiff and Class members did not know of or consent to Defendant's disclosure of their prerecorded video requests and their identities to Meta.

35. The VPPA requires that consent be obtained in a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710.

---

[2] Id.; https://www.facebook.com/business/tools/meta-pixel/get-started (last visited April 23, 2024).

36. At no point was Plaintiff or any other 800 Pound website visitor given a standalone consent form disclosing Defendant's practices at issue and requesting consent. Hence, no individual consented to Defendant's offending practice of sharing video preferences with third parties.

37. Defendant shared with Meta the personal information of Plaintiff and Class members, including their video-viewing histories and associated FIDs, which they reasonably expected would be kept private.

38. Plaintiff and Class members used Defendant's website, and not another competitor's website, because they trusted that Defendant's privacy practices comported with their privacy preferences.

39. Defendant's practice of sharing consumers' personal information and prerecorded video content with Meta without their consent, and its failure to disclose this practice, caused Defendant to profit from advertising revenue it would otherwise not have received.

**B. Plaintiff's Allegations**

40. Plaintiff used his internet-connected device and the browsers installed on that device to visit, rent and watch video content on 800 Pound's website, during the Class Period as defined herein.

41. Plaintiff paid to rent and watched videos on Defendant's website during the Class Period.

42. Plaintiff is a Facebook user. Plaintiff's Facebook profile includes his name and other personal details.

43. Plaintiff visited Defendant's website to request and watch prerecorded video content using the same browser that he uses to log in to Facebook, including while he was logged in to Facebook.

44. Defendant sent Plaintiff's PII, including his FID, as well as the title of each prerecorded video he viewed, to Meta without obtaining his consent through a standalone consent form.

Class Action Complaint

45. Plaintiff values his privacy while web-browsing and watching videos.

46. Plaintiff's viewing preferences constitute personal information of a private and confidential nature and are assets to which no third party has a presumptive right to access.

## TOLLING

47. Any applicable statute of limitations has been tolled by the "delayed discovery" rule. Plaintiff did not know, and had no way of knowing, that his information was being transmitted to Meta, because Defendant kept this information secret.

## CLASS ACTION ALLEGATIONS

48. Plaintiff brings this lawsuit as a class action under F.R.C.P. 23.

49. Plaintiff proposes the following Class and Subclass, consisting of and defined as follows:

> **Nationwide Class**: All persons in the United States who viewed prerecorded video content on 800poundgorillamedia.com during the Class Period and had a Facebook account at the same time.
>
> **California Subclass**: All persons in California who viewed prerecorded video content on 800poundgorillamedia.com during the Class Period and had a Facebook account at the same time.

50. The "Class Period" is defined as two years prior to the date of the filing of this action plus any applicable tolling, through the date of final disposition of this action.

51. Excluded from each Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to redefine each Class and to add

subclasses as appropriate based on discovery and specific theories of liability.

52. **Numerosity**: The Class Members are so numerous that joinder of all members would be unfeasible and impractical. The membership of each Class is currently unknown to Plaintiff at this time; however Plaintiff believes there are thousands of Class Members.

53. **Commonality**: There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including, but not limited to:

- Whether Defendant's use of the Meta Pixel was without consumers' consent or authorization;
- Whether Defendant obtained and shared or caused to be obtained and shared Plaintiff's and Class members' personal information through use of the Meta Pixel, which Defendant installed on its webpages;
- Whether third parties obtained Plaintiff's and Class members' personal information as a result of Defendant's conduct described herein;
- Whether Defendant's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710, et seq.;
- Whether Defendant's conduct violates California Civil Code § 1799.3; and
- Whether Defendant should be enjoined from engaging in such conduct in the future.

54. **Typicality**: Plaintiff's and Class Members' video viewing history was transmitted by Defendant to Meta without their consent and the injuries are typical to all Class Members.

55. **Adequacy**: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom Plaintiff is similarly situated, as

demonstrated herein. In addition, Plaintiff's attorneys, the proposed class counsel, are well versed in the rules governing class action discovery, certification, and settlement. The proposed class counsel are experienced in handling claims involving violations of the VPPA.

56. **Predominance**: The questions of law or fact in this case are common to all Class Members and predominate all their claims. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to each Class rather than individual to its members.

57. **Superiority**: A class action is a superior method for the fair and efficient adjudication of this controversy because:

a. Class-wide damages are essential to induce Defendant to comply with the law.

b. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.

c. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

d. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

e. Class action treatment is manageable because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would endanger.

f. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.

58. Plaintiff and Class Members have suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods because as individuals, Class Members have no way of discovering that Defendant transmitted their viewing history to Meta without their knowledge or consent.

59. Each Class may also be certified because:

- The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

- The prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

- Defendant has acted, or refused to act, on grounds generally applicable to each Class, thereby making appropriate final and injunctive relief with respect to the members of each Class as a whole.

60. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

61. The joinder of Class Members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class Members can be identified through Defendant's records.

# FIRST CAUSE OF ACTION

## VIOLATION OF THE VIDEO PRIVACY PROTECTION ACT

### 18 U.S.C. § 2710, ET SEQ.

### (On Behalf of the Nationwide Class)

62. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

63. The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally identifiable information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

64. As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials."

65. Defendant is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it is engaged in the business of renting and delivering audiovisual materials through its online platform, including the prerecorded videos that Plaintiff rented and viewed, which are similar to prerecorded video cassette tapes. Defendant's rental, sale, and delivery of video content affects interstate and foreign commerce.

66. As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

67. Defendant knowingly caused personal viewing information, including FIDs, concerning Plaintiff and Class members to be disclosed to Meta. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and each Class member to Meta as an individual who viewed Defendant's video content, including the specific prerecorded video materials each such individual watched on Defendant's website. This information allowed Meta to identify

each Plaintiff and each Class members' specific individual video-viewing preferences and habits.

68. As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiff is a renter of Defendant's video content and viewed prerecorded videos provided on Defendant's platform. Hence, Plaintiff is a "consumer" under this definition.

69. As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. Defendant failed to obtain informed, written consent under this definition.

70. Defendant was aware that the disclosures to Meta that were shared through the Pixel identified Plaintiff and Class members. Defendant also knew that Plaintiff's and Class members' personal viewing content was disclosed to Meta because Defendant programmed the Meta Pixel into its website code, knowing that Meta would receive video titles and the individual's FID when they watched a prerecorded video.

71. By knowingly disclosing Plaintiff's and Class members' personal viewing content, Defendant violated Plaintiff's and Class members' statutorily protected right to privacy in their prerecorded video watching habits. See 18 U.S.C. § 2710(c).

72. As a result of the above violations, Defendant is liable to Plaintiff and Class members for actual damages related to their loss of privacy in an amount to be determined at trial or, alternatively, for "liquidated damages not less than $2,500 per plaintiff." 18 U.S.C. § 2710(c)(2)(A). Under the VPPA, Defendant also is liable for reasonable attorney's fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury and sufficient to prevent and deter the same or similar conduct by Defendant in the future.

Class Action Complaint

# SECOND CAUSE OF ACTION

### *VIOLATION OF CALIFORNIA CIVIL CODE § 1799.3*

### (On Behalf of the California Subclass)

73. Plaintiff incorporates by reference each of the allegations contained in the preceding and following paragraphs of this Complaint and further alleges as follows.

74. Cal. Civ. Code § 1799.3(a) prohibits a "person providing video recording sales and rental services" from disclosing "any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

75. Defendant is a "person providing video recording sales and rental services" because it offers consumers access to prerecorded video content.

76. Defendant disclosed Plaintiff's and the California Subclass members' personal information and/or the records of Plaintiff and California Subclass members' video viewing information to Meta. Defendant utilized the Meta Pixel to compel Plaintiff's web browser to transfer Plaintiff's personal information and video request records. For example, the Meta Pixel disclosed his Facebook ID and his event data, like the title of the video content he watched.

77. Plaintiff and the California Subclass members requested, obtained, and viewed video content provided via Defendant's website.

78. Defendant willfully disclosed Plaintiff's personal information because it knowingly and intentionally installed the Meta Pixel on its website and controlled its functionality on its site.

79. Plaintiff and California Subclass members did not provide Defendant with any form of consent—either written or otherwise—to disclose their personal information to third parties.

80. On behalf of himself and the California Subclass, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the

Class Action Complaint

interests of Plaintiff and the California Subclass by requiring Defendant to comply with Cal. Civ. Code §1799.3's requirements for protecting a consumer's personal information; (iii) statutory damages of $500 for each violation of the Cal. Civ. Code §1799.3 pursuant to Cal. Civ. Code §1799.3(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on behalf of himself, the Class and California Subclass as follows:

A. An order certifying the proposed Class and California Subclass; appointing Plaintiff as representative of the Class and California Subclass; and appointing Plaintiff's undersigned counsel as Class counsel;

B. A declaration that Defendant is financially responsible for notifying Class members of the pendency of this suit;

C. A declaration that Defendant has committed the violations alleged herein;

D. An award of statutory damages;

E. An award of punitive damages;

F. An order enjoining Defendant's unlawful and deceptive acts and practices;

G. Injunctive relief for Class members;

H. An order awarding Plaintiff and the other Class members the reasonable costs and expenses of suit, including their attorneys' fees;

I. An order awarding prejudgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

J. Any further relief that the Court may deem appropriate.

.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury for all claims so triable.

|   |                                                                 |
|---|-----------------------------------------------------------------|
|   | Respectfully submitted,                                         |
|   |                                                                 |
|   | **SWIGART LAW GROUP**                                           |
|   |                                                                 |
| Date: May 2, 2024 | By: *s/ Joshua Swigart*                               |
|   | Joshua B. Swigart, Esq.                                         |
|   | Josh@SwigartLawGroup.com                                        |
|   | Attorneys for Plaintiff                                         |
|   |                                                                 |
|   | **LAW OFFICE OF DANIEL G. SHAY**                                |
|   | Daniel G. Shay, Esq.                                            |
|   | DanielShay@TCPAFDCPA.com                                        |
|   | Attorney for Plaintiff                                          |
|   |                                                                 |
|   | **BEN TRAVIS LAW, APC**                                         |
|   | Ben Travis, Esq.                                                |
|   | ben@bentravislaw.com                                            |
|   | Attorney for Plaintiff                                          |

Class Action Complaint